IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

FREDRICK LEWIS YOUNG, III
ADC # 107979                                                                                   PLAINTIFF

v.                                Case No. 5:15-cv-00118-KGB/JTK

WENDY KELLEY, Director,
Arkansas Department of Correction                                                  DEFENDANT

### ORDER

The Court has received Proposed Findings and Recommendations ("Recommendations") from Magistrate Judge Jerome T. Kearney (Dkt. No. 11). Plaintiff Fredrick Lewis Young, III, filed an objection to the Recommendations (Dkt. No. 14). Mr. Young also filed an addendum to his objections, noting several corrections and additional arguments (Dkt. No. 17). The Court has reviewed and considered both of these documents, and the Court has reviewed *de novo* the record in this case. In addition, the Court has received a motion for copies filed by Mr. Young (Dkt. No. 16). The Court also received a letter from Mr. Young regarding his case (Dkt. No. 18).

The Court turns first to the Recommendations. After reviewing the Recommendations, all of Mr. Young's objections, and the record *de novo*, the Court adopts the Recommendations as its findings in this case, determines that Mr. Young's petition for writ of habeas corpus does not present meritorious ground for relief, and denies with prejudice the petition. Consequently, the relief Mr. Young requests is denied.

The Court writes separately to address certain of Mr. Young's objections to the Recommendations. Mr. Young's first objection is that his trial counsel was ineffective for failing to investigate. Mr. Young raised this same issue in his Rule 37 petition. Mr. Young contends in his objections that it is not merely an allegation he makes that his trial counsel was ineffective but

instead that the ineffectiveness of his trial counsel is an established fact in the record. In support, Mr. Young has attached copies of the transcript of his trial counsel's testimony during Mr. Young's Rule 37 hearing. In that testimony, Mr. Young's trial counsel states that he does did not interview witnesses, that he did drive by the trailer park where the crime occurred but that he did not stop and look around, and that he did not attempt to determine whether any of the State's witnesses would show up or be available for Mr. Young's potential trial (Dkt. No. 6, Sup. Ct. Rec., at 171, 179–83).

Mr. Young's trial counsel explained that he does not interview witnesses as a matter of trial strategy (*Id.* at 171). He testified that he does not want witnesses to know what they are about to face when they come into court (*Id.*). He explained that it "goes for the good for us" if a witness says something different than what is in a previously given statement (*Id.*). Mr. Young's trial counsel further testified that he investigates those things that are necessary and that it was not necessary to go out and look at the trailer park when Mr. Young had previously admitted to shooting a gun there twice (*Id.* at 180–81). Mr. Young's trial counsel testified that he did not take any steps to determine if potential witnesses were still in the Little Rock area or would "show up" for trial because that is "borderline on attempting to influence a witness," and reiterated that "it's not my strategy to go talk to witnesses" (*Id.* at 182).

When confronted with Mr. Young's Rule 37 petition, the Arkansas Supreme Court affirmed the circuit court's denial of Mr. Young's Rule 37 petition. With regard to Mr. Young's "failure to investigate" claim, the Arkansas Supreme Court acknowledged that, although counsel has a duty to conduct a reasonable investigation or to make a reasonable decision that a particular investigation is unnecessary:

> [A] petitioner under Rule 37.1 who alleges ineffective assistance of counsel for failure to perform adequate investigation must delineate the actual prejudice that

> arose from the failure to investigate and demonstrate a reasonable probability that the specific materials that would have been uncovered with further investigation could have changed the outcome of trial. *Watson v. State*, 2014 Ark. 203, 444 S.W.3d 835. A petitioner who asserts ineffective assistance for failure to investigate must show that further investigation would have been fruitful and that the specific materials identified that counsel could have uncovered would have been sufficiently significant to raise a reasonable probability of a different outcome at trial. *Id.*

*Young v. State*, 2015 Ark. 65, 6-7.

When evaluating a habeas corpus petition that involves a claim brought to the attention of the state court and adjudicated on the merits, as this claim was, this Court is limited to determining whether the state court's resolution of that claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law or resulted in a decision that was based on an unreasonable application of the facts in the light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). This Court concludes, as the Recommendations conclude, that the state court's resolution of this claim did not result in a decision contrary to, or involving an unreasonable application of, clearly established federal law or result in a decision based on an unreasonable application of the facts in the light of the evidence presented in the state court proceeding.

Pursuant to *Strickland v. Washington*, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. 466 U.S. 668, 691 (1984). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* Further, under federal law, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial depends on the likelihood that discovery of the evidence would have led counsel to change his

3

recommendation as to the plea. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The prejudice element in a habeas analysis is necessary because the failure to investigate—though a constitutional error—might in certain circumstances be a "harmless" one and hence would not justify habeas corpus relief. *Ford v. Parratt*, 673 F.2d 232, 234–35 (8th Cir. 1982) (per curiam) (internal quotation omitted). Where the defendant enters a guilty plea, the issue of prejudice necessarily centers upon whether the attorney's failure to investigate competently any material facts prejudiced the defendant's ability to make an intelligent and voluntary plea of guilty. *Id.*

The Court notes that Mr. Young entered both *nolo contendere* and guilty pleas before the circuit court. He entered a negotiated plea of no contest to a charge of aggravated residential burglary and negotiated pleas of guilty to the offenses of aggravated assault and felon in possession of a firearm. *Young*, 2015 Ark. at *1. The State of Arkansas *nolle prossed* one count each of aggravated residential burglary and aggravated assault, as well as an allegation of committing a felony in the presence of a child. *Id.* The State of Arkansas also agreed to forgo additional sentencing enhancements. *Id.*

Here, the parties do not dispute that Mr. Young's trial counsel obtained the prosecutor's file but did not interview witnesses. According to trial counsel, he did not do so because "it goes to the good for us" if the witness's statement differs from a previously given statement. It is also undisputed that Mr. Young's trial counsel did not have complete transcripts of the witness's statements at the time Mr. Young entered his guilty plea. The Court is hard-pressed to ascertain how trial counsel can effectively rely solely on witness statements when those statements appear to be incomplete. Moreover, it is hard to reconcile trial counsel's statement that he ""reviewed the discovery thoroughly" with his statement that none of the witness statements left anything out (Dkt. No. 101, Ex. 1, Sup. Ct. Rec., at 174-175).

4

However, even if the Court were to assume that trial counsel's failure to conduct any investigation or to realize that he was relying on apparently incomplete copies of witness statements was ineffective, Mr. Young has not met his burden with regard to prejudice and is not entitled to the relief he seeks. In his objections, Mr. Young does not point to any piece of evidence or specific facts that his trial counsel would have uncovered had he interviewed witnesses or done more than drive by the scene. The private investigator who testified regarding trial counsel's investigation did not point to any specific facts that were not known to Mr. Young's trial attorney at the time of Mr. Young's plea. The private investigator testified that there appeared to be missing transcript pages from the witness statements contained in the prosecuting attorney's file (Dkt. No. 101, Ex. 1, Sup. Ct. Rec., at 101-103, 244-245).

Mr. Young maintains that he cannot show what evidence would have been uncovered when the transcript pages are missing. He contends that he is "confused to great lengths as to how he could prove something that is not there to prove it from" (Dkt. No. 14, at 39). Mr. Young, however, does not indicate that he has ever requested and been denied copies of the complete witness statements. While the Court acknowledges Mr. Young's contention that he cannot prove something when the witness statements may contain missing pages, he has failed to show that he could not obtain the missing pages or even present this Court with evidence that the witness statements were inaccurate due to the seemingly missing pages. Mr. Young's objections point out that pages appear to be missing, but he does not tie those missing pages to his decision to plead guilty or indicate what it is that he thinks could or should have been found.

Mr. Young alleges that his trial attorney failed to investigate, but he has made no showing of what an investigation would have revealed and how that would have affected his decision to plead guilty. He contends that he was insistent upon a trial until he determined that his trial counsel

would not "fight for him."  (Dkt. No. 101, Ex. 1, Sup. Ct. Rec., at 168:23-25).   In his testimony regarding the guilty plea at the hearing on his Rule 37 petition, Mr. Young contended that his trial counsel focused on the fact that he faced a potential life sentence and that he felt pressured because his family was in the room during the discussions (Dkt. No. 101, Ex. 1, Sup. Ct. Rec., at 149-154). In his testimony, Mr. Young did not refer to the witness statements or their content.  He did not testify that his trial counsel used any of the witness statements to convince him to plead guilty. *See, e.g.*, *Ford*, 673 F.2d at 235 (holding that counsel's failure to investigate or substantiate the rumored pregnancy of a rape victim and using the rumor as a tool to force the defendant to plead guilty prejudiced the defendant's ability to make an intelligent and knowing decision and that the resulting prejudice was not harmless).

Next, Mr. Young places much emphasis on the fact that the crime scene specialist did not uncover any bullet cases or observe bullet strikes at the scene.  He takes issue with the fact that the Magistrate Judge characterized the person who reported these findings as a detective, rather than as a crime scene specialist or investigator.  This Court acknowledges that, according to the crime scene search warrant provided by Mr. Young, Megan McGonegal's title at the time of the investigation was crime scene specialist.  To the extent that the Recommendations misstate Ms. McGonegal's title at the time of the investigation, the Court concludes that such a misstatement has no impact on this Court's analysis or the conclusion of the Arkansas Supreme Court.  The Court concurs with the Magistrate Judge that Mr. Young did not prove prejudice in this case. Further, the Court determines that this conclusion is well-supported by evidence and does not amount to an unreasonable application of the facts.

Ms. McGonegal stated in her report that she did not recover any bullet casings or observe any bullet strikes at the crime scene (Dkt. No. 14, at 22).  However, the same report states that the

6

"residence was extremely filthy and the walls, ceiling and floor were all in extremely poor condition" (*Id.*). More importantly, Mr. Young testified at the hearing on his Rule 37 petition that he read the discovery in his case prior to entering his guilty plea (Dkt. No. 101, Ex. 1, Sup. Ct. Rec., at 146:17-19). From his testimony, the Court concludes that Mr. Young had access to the information in Ms. McGonegal's report prior to entering his guilty plea.

For these reasons, and based on this Court's *de novo* review of the record, the Court adopts the Recommendations and overrules Mr. Young's objections. The Court will not issue a certificate of appealability. Rule 11 of the Rules Governing Section 2254 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rules Governing Section 2254 Proceedings, Rule 11(a). A court may issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rules Governing Section 2254 Proceedings, Rule 11(a) (noting that § 2253(c)(2) supplies the controlling standard). In *Miller-El v. Cockrell*, 537 U.S. 322 (2003), the Supreme Court held that the "controlling standard" for a certificate of appealability requires the petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented [are] 'adequate to deserve encouragement to proceed further.'" *Id.* at 336. Mr. Young has failed to meet these standards.

Also before the Court is Mr. Young's motion for copies (Dkt. No. 16). The Court grants the motion (Dkt. No. 16). The Court directs the Clerk to transmit copies of the docket filings to Mr. Young at his listed address.

It is so ordered this the 18th day of July, 2017.

_____
Kristine G. Baker
United States District Judge